IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT H. ALAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 13 C 3547 |
| | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| U.S. DEPARTMENT OF THE INTERIOR, | ) | |
| SALLY JEWELL, Secretary of the U.S. | ) | |
| Department of the Interior, and | ) | |
| CHRISTOPHER SERVHEEN, Grizzly | ) | |
| Bear Recovery Coordinator, U.S. Fish & | ) | |
| Wildlife Service, U.S. Department of the | ) | |
| Interior, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This is an action brought under the Freedom of Information Act based on a request for documents submitted to the Department of the Interior regarding the agency's efforts to remove grizzly bears from the endangered species list. For the reasons provided, Defendants, the U.S. Department of the Interior and the U.S. Fish & Wildlife Service's Motion for Summary Judgment is granted [29] and Plaintiff Robert H. Aland's Motion for Summary Judgment is denied [33].

## STATEMENT

At issue are cross motions for summary judgment on plaintiff, Robert Aland's, claim that the United States Department of the Interior (DOI) and the U.S. Fish & Wildlife Service[1] failed

---

[1] The DOI correctly notes that a FOIA plaintiff may not assert a claim against individual federal officials, only the agency itself. *See Batton v. Evers,* 598 F.3d 169, 173, n.1 (5th Cir. 2010). Accordingly, Sally Jewel and Christopher Servheen are indeed improperly named defendants.

to follow the law when conducting a search for requested documents under the Freedom of Information Act (FOIA). Plaintiff's complaint alleges that he requested three distinct sets of documents relating to the agency's efforts to remove grizzly bears from the endangered species list: (1) documents surrounding the drafting of the May 24, 2012 letter from Wyoming Governor Matthew Mead to Secretary Salazar requesting an expedited effort to remove protection for grizzly bears; (2) documents surrounding the drafting of the July 19, 2012 letter from Secretary Salazar to Governor Mead responding to the May 24 letter; and (3) any documents about or discussing the 2011 decision of the U.S. Court of Appeals for the Ninth Circuit in *Greater Yellowstone Coalition v. Salazar,*[2] where the court invalidated the government's removal of the bears' protection. Defendants claim they conducted a thorough search for documents in response to plaintiff's FOIA request and only withheld or redacted five documents pursuant to privilege. We first address the effort made by the government to search for the requested documents, and then analyze whether it properly withheld information under both the deliberative process privilege and the attorney-client privilege. Because we find defendants have met their burden, their Motion for Summary Judgment is granted [29] and plaintiff's Motion for Summary Judgment is denied [33].

**I.     Standard of Review**

FOIA "provides citizens a statutory right of access to government information."[3] It is designed under the principle that the public should be allowed to know what its government is doing, and why.[4] Government agencies are to disclose agency records, unless the records

---

[2] 665 F.3d 1015 (9th Cir. 2011).
[3] *Ferranti v. Bureau of Alcohol, Tobacco and Firearms,* 177 F.Supp.2d 41, 44 (D.D.C. 2001).
[4] *Fazzini v. Dept. of Justice,* No. 90 C 2202, 1991 WL 74649, at *3 (N.D. Ill. May 2, 1991)(*citing N.LR.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978)).

requested fall within one of the Act's nine enumerated exemptions.[5] To challenge the non-disclosure of information, a FOIA requester may claim that the search conducted was inadequate or that the claimed exemption was improperly asserted.[6] A court will grant summary judgment in a FOIA action when the agency shows that it has "fully discharged its obligations under the Act," and conducted a reasonable search to uncover all relevant documents.[7]

## II. Adequacy of Defendants' search for documents

Plaintiff argues that defendants' searches were inadequate and took place only after plaintiff "prodded" them to continue to search for responsive documents. Plaintiff claims that had defendants wanted to be responsive, they would have narrowly focused on only the three items requested, provided those records to plaintiff, and offered a valid Vaughn index for the privileged documents. But defendants' response explains, first, that plaintiff fails to explain why the search terms were inadequate. To this point, we agree. Indeed, plaintiff characterizes his FOIA request as limited to three sets of documents, but his FOIA letter included eight distinct requests, including a request for "[n]ames of the 'numerous outside experts in bear biology and statistics brought in to give careful consideration to reexamination of whether the declines in Whitebark pine poses a threat…,'" any proposal to remove protection from the bears in the "Greater Yellowstone Area," and supporting information on how "'the State of Wyoming has invested'" funds for recovery and the dollar amounts so invested.[8] Plaintiff argues that his eight requests each fit within the three categories enumerated above. That may be true, but plaintiff does not explain how defendants' use of terms like "grizzly bear," Yellowstone," "Mead,"

---

[5] 5 U.S.C. §552(b)(1)-(9).
[6] *Ferranti,* 177 F.Supp.2d at 44.
[7] *Fazzini,* No. 90 C 2202, 1991 WL 74649 at *3(citing *Miller v. United States Dept. of State,* 779 F.2d 1378, 1382 (8th Cir. 1985)).
[8] Pl's Rule 56.1, ¶20, dkt. 35.

3

"delisting," or "Greater Yellowstone Coalition," "Whitebark pine," and "Wyoming" are too broad when those are terms directly taken from his FOIA request. Plaintiff claims that these are "inadequate general search terms"[9] which only resulted in a large number of non-responsive records. Yet, plaintiff does not explain how defendants could have more narrowly focused on what plaintiff was seeking. Also, throughout the process it appears that plaintiff was requesting that defendants produce more documents, thus, conduct additional searches.

The next point of contention is whether plaintiff had to "prod" defendants to complete its production. Plaintiff relies on *Kozacky & Weitzel, P.C. v. IRS,* where the court found the IRS likely "made a less-than-diligent effort" to respond to the plaintiff's FOIA requests, and instructed the IRS to answer interrogatories to assess the adequacy of its search for documents.[10] Here, however, defendants' motion outlines its search process, explaining that the search by DOI included two government agencies and the search results were put on a CD and provided to plaintiff in September 2012.[11] In October, a separate search was being conducted by the U.S. Fish and Wildlife Service (FWS), which produced 47 documents.[12] These documents were made available to plaintiff via a website, but that website was functional for only two days before the agency disabled it claiming private information was inadvertently contained in the records on the site.[13] But prior to it being disabled, plaintiff objected to the production as non-specific to his requests and the FWS then produced an additional nine documents.[14]

It took defendants nearly a year, however, from October 2012 to August and December 2013 to essentially finish their production.[15] It was at this time, after plaintiff filed this lawsuit,

---

[9] Pl's Mem. at 7, dkt. 34.
[10] No. 07 C 2246, 2008 WL 2188457, *6 (N.D. Ill. April 10, 2008).
[11] Def's Rule 56.1, ¶¶6-11, dkt. 31.
[12] *Id.* at ¶24.
[13] *Id.* at ¶25.
[14] *Id.* at ¶27.
[15] Def's Resp. to Pl's 56.1, ¶35-37, dkt. 42.

that defendants provided the 47 records that had been initially provided via the website, refined their redactions, and provided a Vaughn index.[16]

Though there is no explanation from defendants as to why they failed to timely provide a proper Vaughn index, they nonetheless explain why they did not provide the production (via CD) sooner. Defendants assert that it was only after the lawsuit was filed that they learned plaintiff did not have those 47 documents, and refer to his e-mail communication from 2012 (when the website was created), where plaintiff confirmed having reviewed the production.[17] Plaintiff also fails to show that he asked for copies of this production, but did not receive them sooner.[18] Instead, plaintiff argues that defendants' actions, and willingness to refine their Vaughn index after the lawsuit was filed, was only to convince the Court that defendants were responsive.[19] But that is, in fact, prudent on the part of defendants. As we see it, it was defendants' job to try to resolve the matter to avoid further litigation.

We also note that plaintiff complains that the 47 documents did not come with an index,[20] or correlate to his numbered paragraphs in his FOIA request.[21] Plaintiff, therefore, indicated that it was "clear" to him that defendants were being "intentionally non-responsive."[22] But plaintiff provides no support for his speculation that defendants have intentionally provided non-responsive documents, or that there are more responsive records that exist, and has cited no case law that would require defendants to correlate their production to his FOIA requests by paragraph number. Perhaps more correct is that plaintiff "misunderstands the uses and limits of

---

[16] Def's Rule 56.1, ¶¶28-29, dkt. 31; *see also* Pl's Dec., ¶32, dkt. 36(noting that this production included the first Vaughn Index rather than, as defendants claim, an updated Vaughn Index).
[17] Def's Rule 56.1, ¶28, dkt. 31.
[18] *See* Pl's Resp. Def's Rule 56.1, ¶28, dkt. 37 (disputing only the idea that the documents sent via CD were in fact identical to those that had been produced on the website).
[19] Pl's Resp. Def's Rule 56.1, ¶29, dkt. 37.
[20] Pl's Rule 56.1, ¶27, dkt. 35.
[21] Pl's Rule 56.1, ¶¶24, 30, dkt. 35 (stating in his October 4, 2012 email that the government "makes no effort whatever to state which document responds to which request in my August 9 request.").
[22] Pl's Rule 56.1, ¶34, dkt. 35.

the Freedom of Information Act, and the government's motion obscures its own best argument, which is that FOIA provides access to existing records but does not establish a research service."[23] As one court put it, FOIA does not require defendants to "dig out all information that might exist, in whatever form or place it might be found" or to "*create* a document that answers plaintiff's question."[24]

On this record we find no genuine issue of material fact as to the adequacy of defendants' search, and plaintiff does not point us to one. Plaintiff argues that because the Governor of Wyoming wrote a letter to the U.S. Secretary of the Interior regarding the grizzly bear de-listing, it "is reasonable to conclude that a high-level exchange of communications of that type generated substantially more responsive records than Defendants have disclosed."[25] But we have no way to assess this claim. Plaintiff fails to offer support that more documents exist, or provide the Court with an analysis of why the records he did receive are irrelevant, or show an obvious hole in defendants' production.[26] And plaintiff's claim that defendants' search was disjointed may be true. Defendants have, nonetheless, established that they used reasonable search methods to produce plaintiff's requested information, and without a showing by plaintiff that defendants' search was in bad faith, defendants have met their burden.[27]

### III. FOIA Exemptions

Five documents have been withheld or redacted in response to plaintiff's FOIA request. Plaintiff argues that though he does not have access to the withheld records, it is clear that defendants have not proved all the elements required under either the deliberative process

---

[23] *Frank v. U.S. Dept. of Justice,* 941 F.Supp.4, 5 (D.D.C. 1996).
[24] *Frank,* 941 F.Supp. at 5.
[25] Pl's Reply at 9, dkt. 46.
[26] *See Carney v. U.S. Dept. of Justice,* 19 F.3d 807, 813 (2d Cir. 1994)(stating that the court sympathized with plaintiff's dilemma, but "faced with a complete lack of tangible proof" that the DOJ failed to acknowledge a huge class of records responsive to his FOIA request, his allegations were mere speculation and, thus, denial of discovery was warranted).
[27] *See Miller,* 779 F.2d 1378, 1383.

privilege or the attorney-client privilege, upon which defendants rely. To determine whether defendants are improperly withholding records pursuant to an exemption under FOIA, the Court may examine the contents of agency records in camera, which we have done.[28] The burden is on defendants to show the exemption applies by demonstrating how the information logically falls within the claimed exemption.[29]

### A. Deliberative Process Privilege

Defendants assert the deliberative process privilege protects two of the documents withheld from production. Defendants characterize them as: (1) a string of emails between FWS officials discussing options on how to respond to the opinions issued by the District Court and Ninth Circuit; and (2) a string of emails between FWS officials discussing the centennial mountain sheep grazing program and its potential effects on the grizzly bear habitat.

FOIA's exemption five embodies "the deliberative process privilege," which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party…in litigation with the agency."[30] More specifically, the privilege protects the "'decisionmaking processes of government agencies'" to allow for "'the frank discussion of legal and policy issues.'"[31] This privilege protects documents that are both predecisional and deliberative.[32]

Plaintiff argues that these emails were not "pre-decisional" because they occurred after the decision was made to pursue grizzly bear de-listing. Defendants summarize these emails, however, as potential DOI initiatives in response to the Ninth Circuit's decision regarding the

---

[28] *Citizens for Resp. and Ethics in WA v. U.S. Dept. of Justice,* 658 F.Supp. 2d 217, 224 (D.D.C. 2009).
[29] *Citizens for Resp. and Ethics in WA,* 658 F.Supp. 2d at 224-25.
[30] 5 U.S.C. §552(b)(5).
[31] *Mapother v. Dept. of Justice,* 3 F.3d 1533, 1537 (D.C. Cir. 1993)(*quoting Wolfe v. Dept. of Health & Human Services,* 839 F.2d 768, 773 (D.C. Cir. 1988)).
[32] *Mapother,* 3 F.3d at 1537.

bears' habitat, and how it impacts the de-listing efforts. Defendants also argue that these emails are deliberative because they are discussions within the agency on policy judgments and proposed actions in the aftermath of the Ninth Circuit decision.

Indeed, having reviewed the emails in camera, we find the redacted emails are the "give-and-take of the consultative process,"[33] or, deliberative. But not because they discuss issues directly related to the Ninth Circuit case. There, the court focused on the decline in whitebark pine, a key food source for the bears, and the need for a determination on whether that threatens the bear population. The portions of these emails that discuss the Ninth Circuit case have not been redacted by defendants. Rather, the redacted information all relates to relocating sheep grazing out of grizzly bear habitat, and how that relates to grizzly bear de-listing.

We do not agree, then, with plaintiff that the deliberative process privilege ceases to apply here because advice was accepted by the decision-maker in formulating a policy, as evidenced by the "Mead" or the "Salazar" letters. To the contrary, these emails do not relate to any decision discussed in those letters. As a response to Governor Mead's request to quickly de-list the grizzly bear, the Salazar letter – referencing the Ninth Circuit case – focused on the relationship between whitebark pine and grizzly bears, and the ultimate goal of de-listing the bear. These emails appear to be addressing a different issue entirely, albeit related to grizzly bear de-listing. These emails can also be considered predecisional, as it appears that the agency has yet to decide what it will be doing with respect to sheep grazing in the bears' habitat and, ultimately, what it will do prior to again attempting to de-list the grizzly bear.[34]

---

[33] *Sierra Club v. U.S. Dept. of Interior,* 384 F.Supp.2d 1, 15 (D.D.C. 2004).
[34] *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, n. 18, 95 S.Ct. 1504, 44 L.Ed. 2d 29 (1975)(noting that "the existence of the [deliberative process] privilege [does not] turn [] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared" because agencies will at times generate documents that contain recommendations that "do not ripen into agency decisions.").

## B. Attorney-Client Privilege

Defendants argue that the three remaining documents are protected by the attorney-client privilege. These are: (1) an email from a Department of Justice (DOJ) attorney that offers an initial summary and interpretation of the Ninth Circuit ruling; (2) an attachment to an email exchange between two FWS employees that includes edits by DOI Office of the Solicitor attorneys to the "Salazar" letter; and (3) an email exchange between the Chief of Endangered Species at the FWS and several government employees, including an attorney from the DOJ, specifying the possible next steps to address the issues raised in the Ninth Circuit case.

In a FOIA action, a document is subject to the attorney-client privilege "if it reflects communications between an agency and an attorney that occurred in the course of providing or obtaining legal advice on the ramifications of an agency's actions."[35] The first two documents clearly fall within this category. And the email exchange between the Chief of Endangered Species and counsel for the government could equally be categorized under the deliberative process privilege simply because the message is offering rulemaking ideas for how to proceed following the Ninth Circuit's decision. Plaintiff's argument that each document does not include the marking "attorney-client privilege" or "privileged" is immaterial in this context; the privilege is based on the confidential nature of the communications, not its label. Plaintiff's claim that the privilege is waived because communications included several non-lawyers also fails. "'In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.'"[36] In each of these communications the individuals were either government lawyers or agency employees. Exemption five applies when the government "'is dealing with its attorneys

---

[35] *Weigel Broadcasting Co. v. FCC,* No. 11 C 236, 2012 WL 567742, *2 (N.D. Ill. Feb. 17, 2012)(*citing Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 252 (D.C. Cir. 1977)).
[36] *In re Lindsey,* 158 F.3d 1263, 1268 (D.C Cir. 1998)(*quoting Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C. Cir. 1997).

as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with is counselors.'"[37] That more than one agency employee was involved does not waive the privilege.

### IV.     Conclusion

For the reasons provided, defendants' Motion for Summary Judgment is granted [29] and plaintiff's Motion for Summary Judgment is denied [33].


**ENTERED:**

Date: September 19, 2014                          /e/     Susan E. Cox
                                                  U.S. Magistrate Judge

---

[37] *In re Lindsey,* 158 F.3d at 1269 (*quoting Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980).